# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

JANYCE TILMAN-JONES, et al.

        Plaintiffs,                        Case No. 2:11-cv-13002

v.                                          Honorable John Corbett O'Meara

BRIDGEPORT MUSIC, INC., et al.

        Defendants.

_____/

<table>
<tr><td>

Gregory J. Reed
Gregory J. Reed Associates
1201 Bagley Ave.
Detroit, MI 48226
(313) 961-3580
gjrassoc@aol.com
Attorney for Plaintiffs

</td><td>

Howard Hertz
Hertz Schram
1760 S. Telegraph Road
Suite 300
Bloomfield Hills, MI 48302
(248) 335-5000
hhertz@hertzschram.com
Attorney for Defendants

</td></tr>
<tr><td>

Jeffrey P. Thennisch
Dobrusin and Thennisch
29 W. Lawrence Street
Suite 210
Pontiac, MI 48342
248-292-2920
jeff@patentco.com
Attorney for Plaintiffs

</td><td>

Richard S. Busch
King & Ballow
315 Union Street
1100 Union Street Plaza
Nashville, TN 37201
(615) 259-3456
rbusch@kingballow.com
Attorney for Defendants

James E. Stewart
Leonard M. Niehoff
Honigman Miller Schwartz and Cohn, LLP
2290 First National Building
660 Woodward Ave.
Detroit, MI 48226
(313) 465-7542
jstewart@honigman.com
Attorney for Movants

</td></tr>
</table>

**MOTION OF THE NEW YORK TIMES COMPANY
AND WXYZ-TV TO INTERVENE FOR THE LIMITED PURPOSE OF
MOVING TO UNSEAL RECORDS AND LIFT PROTECTIVE ORDER**

For the following reasons, The New York Times Company and WXYZ-TV ("Movants"), respectfully request that this Court allow them to intervene in this case for the limited purpose of asking the Court to vacate its order sealing certain records in this matter and restricting the extent to which Plaintiffs' counsel can provide those records to non-parties:

1.      Movants are media entities that investigate and report upon matters of public interest.  As such, they have standing to request that this Court open records that have been sealed from public review and scrutiny.  They also have standing to request that this Court lift prohibitions regarding communication that have been imposed on legal counsel.

2.      As a matter of procedure, it is not clear that Movants need to intervene to be heard on these issues.  If they do, however, then intervention is clearly proper under Fed. R. Civ. P. 24(a) or, alternatively, 24(b).

3.      Our federal copyright laws raise issues of substantial public interest.  Those laws are expressly authorized by the United States Constitution.  They mediate competing claims of tremendous significance—on one hand rewarding those who engage in creative enterprises by providing them with a cognizable property interest, on the other hand allowing room for the fair use of that work and extinguishing that property interest after the passage of time.  And they have global implications by virtue of international agreements like the Berne Convention and the World Trade Organization Agreement on Trade-Related Aspects of Intellectual Property Rights.

4.      The fair and appropriate use of the federal courts also raises issues of substantial public interest.  Indeed, the United States Supreme Court has repeatedly recognized that public access—and, specifically, media access—to judicial proceedings serves numerous policy goals

and is presumptively guaranteed by the First Amendment. In addition, the attorneys who appear before those courts do so under public scrutiny: they are subject to licensing, regulation, and a wide array of court-imposed and bar-imposed sanctions for misconduct—all of which are generally matters of open record.

5. This case implicates all of these issues of substantial public interest. In an eighty-page four-hundred-plus-paragraph-long complaint, Plaintiffs accused Defendants of engaging in a "years-long and continuing pattern of unprecedented wrongful conduct, intended to enrich themselves by, among other things, unlawfully, falsely, and fraudulently claiming ownership" of certain copyrights. First Amended Complaint, Docket #15, ¶ 1. Defendants contested these allegations and moved this Court to dismiss the complaint, which it did on the grounds that the complaint was barred by a release and by the doctrine of res judicata. Opinion and Order Granting Motion to Dismiss, Docket #67. Along the way, Plaintiffs filed declarations raising accusations of impropriety against defense counsel (*see* Docket # 67 at 9-10) and Defendants filed two motions for sanctions against Plaintiffs' counsel (Docket # 48 and #58), at least one of which the Court granted (Docket #67 at 10). Docket entries in this matter suggest that proceedings regarding those sanctions continue to this day.

6. Unfortunately, at least one of the central issues in this case has been largely litigated "under seal" and hidden from public view. This trend appears to have begun on October 20, 2011, when Defendants filed their Motion for Leave to File Documents Under Seal. Docket #17. In that Motion, Defendants averred that Plaintiff had threatened "to publicly file defamatory and false allegations against Defendants and Defendants' current and former attorneys." *Id.* at ¶ ii. Those allegations were apparently contained in a declaration signed by one Jane Peterer. *Id.* at ¶ i. Defendants therefore requested, ex parte, that the court allow them

to file under seal a motion and brief seeking to bar the filing of that declaration, or, in the alternative, for a protective order.

7.     At that time, this case was assigned to the Honorable Bernard Friedman.  On October 21, 2011, Judge Friedman entered an order granting the motion to seal and for a protective order ("the Sealing Order").  Docket # 19.  That same day, Judge Friedman issued a notice directing the parties to appear on November 8, 2011 for a hearing regarding that order.

8.     On November 8, Judge Friedman conducted that hearing and reviewed the reasons for entering the Sealing Order.  Docket #29.  After entertaining argument from counsel, Judge Friedman stated as follows: "I issued this [order] because I was concerned about a couple of things.  Number one, I was mainly—not mainly, I was very concerned [about] a quid pro quo, I'm going to file this unless I settle the case.  I don't think that's the way litigation should be handled and I'm not saying it was or wasn't because all it is [is] an allegation at this point.  But that was certainly a motivating factor and me thinking that we should have a hearing before we move any further … I thought that was a serious kind of thing that the Court doesn't believe should be used in engaging litigation.  Quid pro quo is okay, but a threat quid pro quo is just—I think it violates the spirit, and also I think it violates the civility code of this Court."  *Id.* at 8.  Judge Friedman decided to leave the Sealing Order in place, indicating that "there should be no public disclosure" of the Peterer declaration "or disclosure to anyone other than that which is absolutely needed in relation to litigation."  *Id.* at 12.

9.     After the Court entered the Sealing Order, Plaintiffs' attorney Gregory Reed filed his own declaration, "summarizing and repeating allegations contained in the Peterer Declaration."  *See* Docket #26 and Docket #67 at 10.  This Court later found that the Reed Declaration was filed "in an apparent attempt to circumvent the filing of the Peterer

Declaration"; that Reed "had been sanctioned [by Judge Paul Borman] for filing the same Peterer Declaration" in a different case; and that Reed nevertheless had not withdrawn his declaration in this case.  *Id.*  Accordingly, this Court struck the Reed Declaration and imposed sanctions against Plaintiffs' counsel for "fil[ing] a frivolous action to harass Defendants" and "multipl[ying] the proceedings unreasonably and vexatiously."  Docket #67 at 10.  *See also* Docket #26 (reflecting filing of Reed Declaration and striking of same).

10.     While these issues were pending, on August 3, 2012 Defendants filed a Motion for Finding of Contempt of Court and for Sanctions Against [Plaintiffs' Counsel] Jeffrey P. Thennisch for Violating This Court's Orders.  Docket #58.  In this motion, Defendants claimed that Thennisch worked with Peterer to draft "a purportedly new Declaration," which he then filed in a case pending in California.  Defendants alleged that this Peterer Declaration "is not truly new at all, as it contains no less than *eleven* of the same defamatory statements contained in the original Declaration."  *Id.* at ¶ 6.  Defendants further alleged that the "new" Declaration had been posted on YouTube.  Defendants asked this Court to hold Thennisch in contempt and to order YouTube to remove the Peterer Declaration from its website.  Defendants further asked that the order compelling YouTube to remove the Declaration be filed under seal so the YouTube link to the Peterer Declaration would not be publicly disclosed.  *Id.* at ¶ 15.  It appears that Thennisch responded to this motion under seal (Docket #62) and that at least one declaration in support of Defendants' motion has been filed under seal (Docket #69).  As far as Movants can determine, this Court has not yet ruled on this motion.

11.     As a matter of First Amendment law, the public enjoys a presumptive right of access to court proceedings.  This right extends to court records, pleadings, and exhibits.  Of course, the right is not absolute.  But the strong presumption in favor of openness can be

overcome only if the court makes particularized and on-the-record findings that the public's interest in access to information is overcome by a specific and compelling showing of harm. Even then, sealing of court records is appropriate only where it would be effective and where no reasonably available alternative measure would suffice to address the concern. A sealing of records is constitutionally impermissible unless it complies with these standards. A protective order designed to enforce such a sealing is obviously subject to the same standards.

12. Movants respectfully contend that the initial sealing of records in this case—subsequently perpetuated in numerous other filings—did not comply with these standards. The Sealing Order was issued without any articulated balancing of the alleged harm and the public interest. Nor were any findings made with respect to viable alternatives to sealing.

13. At the November 8, 2011 hearing, Judge Friedman found that communications by Plaintiffs' counsel around the filing of the Peterer Declaration were inconsistent with "the way litigation should be handled" and with the court's civility principles. This formed the basis for the Sealing Order. The narrowly tailored way to address those concerns, however, was to sanction Plaintiffs' counsel for misconduct—as this Court later did—not to seal records.

14. The parties apparently relied upon the reasoning behind the Sealing Order to justify the filing of additional documents under seal. As a result, many documents other than the Peterer Declaration—motions, briefs, responses, further declarations, and so on—have been hidden from public view and scrutiny despite the absence of any particularized findings that would justify such extraordinary measures. The parties evidently filed those documents under seal without this Court's evaluation of whether doing so complied with the relevant constitutional requirements.

15.     Defendants have argued that the Peterer Declaration should be sealed because it says bad things about them and their current and previous lawyers.  This, however, is a constitutionally inadequate basis for an order sealing records.  Indeed, accusations and counter-accusations are common in litigation.

16.     Even if the Sealing Order complied with constitutional standards when it was issued, it has become clear that sealing is no longer justifiable.  Defendant alleges—and this Court has found—that the Reed Declaration largely replicated the controversial material in the Peterer Declaration.  Defendant further alleges that the "new" Peterer Declaration repeats substantial portions of the Declaration that remains under seal.  That "new" Declaration has been posted on YouTube, where it remains to this day, available to millions and accessible by any YouTube visitor who wishes to read it.

17.     Movants respectfully submit that, at this juncture, the Court cannot reasonably make findings that would justify leaving the Sealing Order in place.  In light of the other disclosures outlined above, any interest that was served by the initial decision to seal no longer exists.  In addition, the Sealing Order has proven to be an ineffective mechanism for limiting circulation of the allegations contained in the Peterer Declaration.  Thus, whatever the merits of the Sealing Order when it was entered the time has plainly come to set it aside.

WHEREFORE, Movants respectfully request that this Court (a) allow them to intervene, if necessary, and (b) set aside the Sealing Order (including the protective order) and unseal all sealed documents in this case.

Respectfully submitted,

By:_____
    James E. Stewart
    Leonard M. Niehoff
Honigman Miller Schwartz and Cohn, LLP
2290 First National Building
660 Woodward Ave.
Detroit, MI 48226
(313)-465-7542
jstewart@honigman.com
lniehoff@honigman.com
Attorney for Movants, The New York Times
and WXYZ-TV

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN


JANYCE TILMAN-JONES, et al.

                Plaintiffs,                              Case No. 2:11-cv-13002

v.                                                    Honorable John Corbett O'Meara

BRIDGEPORT MUSIC, INC., et al.

                Defendants.

_____/


# BRIEF IN SUPPORT OF MOTION OF THE NEW YORK TIMES COMPANY
# AND WXYZ-TV TO INTERVENE FOR THE LIMITED PURPOSE OF MOVING
# <u>TO UNSEAL RECORDS AND LIFT PROTECTIVE ORDER</u>

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND FACTS AND PRIOR PROCEEDINGS.............................................1

ARGUMENT .......................................................................................................4

    I.    Movants Should Be Allowed To Intervene .................................................4

    II.   Judicial Proceedings and Records are Presumptively Open .........................6

    III.  The Sealing and Protective Order Entered Here Should Be Vacated...........7

CONCLUSION.....................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002) ......................................................... 6

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) ............................................... 4, 6

*Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) ..................................................... 6

*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) .................................................... 6, 7

*Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980) ............................................................. 6

*Tri-County Wholesale Distributors, Inc. v. Bellas Co.*,
    2012 U.S. App. LEXIS 13415 (6th Cir. 2012) ..................................................................... 6

**Rules**

Fed. R. Civ. P. 24(a) ............................................................................................................ 1, 4, 5

Fed. R. Civ. P. 24(b) ............................................................................................................. 4, 5

ii

## INTRODUCTION

As a principle of constitutional law, there is a presumptive First Amendment right of access to judicial proceedings and the pleadings that relate to them.  Proceedings can be closed and documents sealed only if the court makes specific findings that doing so is a necessary and effective measure to prevent a significant and identifiable harm.  And, even then, the court must narrowly tailor that closure or sealing so the public is not unnecessarily deprived of information about its courts and the proceedings before them.

In this case, records critical to a full understanding of the proceedings were sealed without those findings having been made.  Furthermore, in light of the current posture of this case it is clear that sealing those records has proven ineffective and futile.  The New York Times Company and WXYZ-TV ("Movants") therefore respectfully request that they be allowed to intervene in this case for the limited purpose of asking this Court to vacate its order sealing certain records in this matter and restricting the extent to which Plaintiffs' counsel can provide those records to third parties.

## BACKGROUND FACTS AND PRIOR PROCEEDINGS

Plaintiffs here filed an eighty-page four-hundred-plus-paragraph-long complaint that accused Defendants of engaging in a "years-long and continuing pattern of unprecedented wrongful conduct, intended to enrich themselves by, among other things, unlawfully, falsely, and fraudulently claiming ownership" of certain copyrights.  First Amended Complaint, Docket #15, ¶ 1.  Defendants contested these allegations and moved this Court to dismiss the complaint, which it did on the grounds that the complaint was barred by a release and by the doctrine of res judicata.  Opinion and Order Granting Motion to Dismiss, Docket #67.  Along the way, Plaintiffs filed declarations raising accusations of impropriety against defense counsel (*see* Docket # 67 at

9-10) and Defendants filed two motions for sanctions against Plaintiffs' counsel (Docket # 48 and #58), at least one of which the Court granted (Docket #67 at 10).  Docket entries in this matter suggest that proceedings related to the sanctions imposed on Plaintiffs' counsel continue to this day.

At least one of the central issues in this case has largely been litigated "under seal."  This trend appears to have begun on October 20, 2011, when Defendants filed their Motion for Leave to File Documents Under Seal.  Docket #17.  In that Motion, Defendants averred that Plaintiff had threatened "to publicly file defamatory and false allegations against Defendants and Defendants' current and former attorneys."  *Id.* at ¶ ii.  Those allegations were apparently contained in a declaration signed by one Jane Peterer.  *Id.* at ¶ i.  Defendants therefore requested, ex parte, that the court allow them to file under seal a motion and brief seeking to bar the filing of that declaration, or, in the alternative, for a protective order.

At that time, this case was assigned to the Honorable Bernard Friedman.  On October 21, 2011, Judge Friedman entered an order granting the motion to seal and for a protective order ("the Sealing Order").  Docket # 19.  That same day, Judge Friedman issued a notice directing the parties to appear on November 8, 2011 for a hearing regarding that order.

On November 8, Judge Friedman conducted that hearing and reviewed his reasons for entering the Sealing Order.  Docket #29.  After entertaining argument from counsel, Judge Friedman stated as follows:

> I issued this [order] because I was concerned about a couple of things.  Number one, I was mainly—not mainly, I was very concerned [about] a quid pro quo, I'm going to file this unless I settle the case.  I don't think that's the way litigation should be handled and I'm not saying it was or wasn't because all it is [is] an allegation at this point.  But that was certainly a motivating factor and me thinking that we should have a hearing before we move any further … I thought that was a serious kind of thing that the Court doesn't believe should be used in engaging litigation.  Quid pro quo is okay, but a threat quid pro quo is just—I

think it violates the spirit, and also I think it violates the civility code of this Court.

*Id.* at 8.   Judge Friedman decided to leave the Sealing Order in place, indicating that "there should be no public disclosure" of the Peterer declaration "or disclosure to anyone other than that which is absolutely needed in relation to litigation." *Id.* at 12.

After the Court sealed the Peterer Declaration, Plaintiffs' attorney Gregory Reed apparently filed his own declaration, "summarizing and repeating allegations contained in the Peterer Declaration." *See* Docket #26 and Docket #67 at 10.   Indeed, this Court later found that the Reed Declaration was filed "in an apparent attempt to circumvent the filing of the Peterer Declaration"; that Reed "had been sanctioned [by Judge Paul Borman] for filing the same Peterer Declaration" in a different case; and that Reed nevertheless had not withdrawn his declaration in this case.   *Id.*   Accordingly, this Court struck the Reed Declaration and imposed sanctions against Plaintiffs' counsel for "fil[ing] a frivolous action to harass Defendants" and "multipl[ying] the proceedings unreasonably and vexatiously."   Docket #67 at 10.   *See also* Docket #26 (reflecting filing of Reed Declaration and striking of same).

While these issues were pending, on August 3, 2012 Defendants filed a Motion for Finding of Contempt of Court and for Sanctions Against [Plaintiffs' Counsel] Jeffrey P. Thennisch for Violating This Court's Orders.   Docket #58.   In this motion, Defendants claimed that Thennisch worked with Peterer to draft "a purportedly new Declaration," which he then filed in a case pending in California.   Defendants alleged that this Peterer Declaration "is not truly new at all, as it contains no less than *eleven* of the same defamatory statements contained in the original Declaration." *Id.* at ¶ 6.   Defendants further alleged that the "new" Declaration has been posted on YouTube.   Defendants asked this Court to hold Thennisch in contempt and to order YouTube to remove the Peterer Declaration from its website.   Defendants further asked that the

order compelling YouTube to remove the Declaration be filed under seal so the YouTube link to the Peterer Declaration would not be publicly disclosed. *Id.* at ¶ 15. It appears that Thennisch responded to this motion under seal ( Docket #62) and that at least one declaration in support of Defendants' motion has been filed under seal. Docket #69. As far as Movants can determine, the Court has not yet ruled on this motion.

## ARGUMENT

### I.    Movants Should Be Allowed To Intervene

The Supreme Court of the United States has recognized that the media have standing to challenge orders that deprive them of information regarding judicial proceedings. *See, e.g., Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n. 25 (1982) ("representatives of the press and general public 'must be given an opportunity to be heard on the question of their exclusion'"). As non-parties with standing to object, it is not clear that Movants need to intervene in this action to be heard. (For example, non-parties ordinarily do not need to intervene to seek protective orders from subpoenas that parties have directed to them.) If, however, Movants do need to intervene to be heard then it is clear that they should be allowed to do so.

Fed. R. Civ. P. 24(a) provides that a court must permit anyone to intervene who is given an unconditional right to do so by a federal statute or who claims an interest relating to the transaction that is the subject of the action "and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(b) provides that a court may permit anyone to intervene who is given a conditional right to intervene by a federal statute or who has a claim or defense that shares with the main action a common question of law or fact.

As noted above, the Supreme Court has recognized that the media have a right (which appears to be unconditional) to be heard on questions of closure.  Furthermore, Movants' right of access has been—and continues to be—impeded by the Sealing Order.  Finally, the existing parties have failed to protect Movants' right of access—to the contrary, Plaintiffs *and* Defendants have filed material under seal in this case.  Movants therefore respectfully suggest that intervention must be allowed under Fed. R. Civ. P. 24(a), or, at minimum, should be allowed under Fed. R. Civ. P. 24(b).

It is particularly important that Movants be heard because this case involves numerous issues of substantial public interest.   Certainly, our federal copyright laws raise such issues.  Those laws are expressly authorized by the United States Constitution.  They mediate competing claims of tremendous significance—on one hand rewarding those who engage in creative enterprises by providing them with a cognizable property interest, on the other hand allowing room for the fair use of that work and extinguishing that property interest after the passage of time.  And they have global implications by virtue of international agreements like the Berne Convention and the World Trade Organization Agreement on Trade-Related Aspects of Intellectual Property Rights.

The fair and appropriate use of the federal courts also raises issues of substantial public interest.  As will be discussed, the United States Supreme Court has repeatedly recognized that public access—and, specifically, media access—to judicial proceedings serves numerous policy goals and is presumptively guaranteed by the First Amendment.  In addition, the attorneys who appear before those courts do so under public scrutiny: they are subject to licensing, regulation, and a wide array of court-imposed and bar-imposed sanctions for misconduct—all of which are generally matters of open record.

This case implicates all of these issues of substantial public interest.

## II.    Judicial Proceedings and Records are Presumptively Open

For more than thirty years, it has been settled that the public has a presumptive right of access to judicial proceedings. *See Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980) (recognizing right to attend criminal trials); *Globe Newspapers*, *supra* (holding unconstitutional a Massachusetts statute requiring judges to exclude the public from the courtroom during the testimony of minor victims of sexual offenses); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) ("*Press-Enterprise I*") (recognizing right to attend voir dire of jury in criminal case); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ("*Press-Enterprise II*") (recognizing right of access to preliminary hearing in criminal case and to transcript of hearing).

Like many other courts, the Sixth Circuit has held that this right of access applies to civil proceedings. *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695-96 (6th Cir. 2002) (recognizing right of access to immigration proceedings). In addition, the Sixth Circuit and other courts have held that this right of access extends to pleadings and documents attached to pleadings. *See Tri-County Wholesale Distributors, Inc. v. Bellas Co.*, 2012 U.S. App. LEXIS 13415 (6th Cir. 2012) (unpublished; copy attached) (holding that right of access applied to sealed pleadings and exhibits) and cases cited therein. In sum, the First Amendment creates a strong presumption in favor of public access to pleadings and the materials attached to them

In *Tri-County*, the Sixth Circuit summarized the extraordinary showing that is necessary to justify removing those documents from public view and scrutiny:

> [T]he district court should not have sealed pleadings and exhibits without making constitutionally required findings to justify concealing court documents from the public. The public holds a qualified constitutional right of access to court documents that extends well beyond judicial opinions. The First Amendment access right extends to court dockets, records, pleadings, and exhibits, and establishes a presumption of public access that can only be overcome by specific,

on-the-record findings that the public's interest in access to information is overcome by specific and compelling showings of harm …

The district court [sealed these pleadings] without any specific findings of harm, without any balancing of the public's interest against the parties', and with no evident attempt at narrow tailoring.

*Id.* at *36-38 (Gwin, J., concurring in part and dissenting in part).[1]  Indeed, this presumption sets a high bar: before depriving the public of information about judicial proceedings, a court must make "specific, on the record findings" that "closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Press-Enterprise II*, 13-14.  Of course, a closure is only narrowly tailored if there is a "substantial probability" that closure will "prevent" the harm in question.  *Id.*  And closure is only narrowly tailored if no "reasonable alternatives" are available.  *Id.*

### III.   The Sealing and Protective Order Entered Here Should Be Vacated

The initial sealing of records in this case—subsequently perpetuated in numerous other filings—did not comply with the standards set forth above.  The Sealing Order was issued without any articulated balancing of the alleged harm and the public interest.  Nor were any findings made with respect to viable alternatives to sealing.

Indeed, Movants respectfully suggest that there is a disconnection between the concerns expressed by the Court and the issuance of the Sealing Order.  At the November 8, 2011 hearing, Judge Friedman found that communications by Plaintiffs' counsel around the filing of the Peterer Declaration were inconsistent with "the way litigation should be handled" and with the court's civility principles.  Movants understand and sympathize with Judge Friedman's desire to ensure that the federal courts are not used for abusive or improper purposes.  But the narrowly tailored

---

[1] Judge Gwin and the majority concurred with respect to the principles at issue in this motion.  *Id.* at *20 ("Having reviewed the analysis of Section IV of the dissent, we are inclined to agree that the parties' stipulated protective order was overly broad and improperly entered").

way to address *those* concerns was to sanction Plaintiffs' counsel for misconduct—as this Court later, in fact, did.  A denial of public access is not a response—let alone a narrowly tailored response—to a lawyer behaving badly.

Furthermore, it appears that the parties relied upon this initial decision to justify the filing of additional documents under seal.  As a result, many documents other than the Peterer Declaration—motions, briefs, responses, further declarations, and so on—have been hidden from public view and scrutiny despite the absence of any particularized findings that would justify such extraordinary measures.  The parties evidently filed those documents under seal without this Court's evaluation of whether doing so complied with the relevant constitutional requirements.

Of course, in their initial request for relief Defendants raised a concern that did not explicitly find its way into the reasoning behind the Sealing Order.  In sum, Defendants argued that the Peterer Declaration should be sealed because it says bad things about them and their current and previous lawyers.  But this argument proves too much.  If proceedings could be closed and pleadings sealed whenever they included strident and unpleasant allegations then the right of access would quickly become a nullity.  Accusations and counter-accusations—some or all of which may strike the party on the receiving end as false, disparaging, and unfair—are the stuff of hard-fought litigation.

Even if the initial sealing of records complied with constitutional standards, however, it has become clear that the Sealing Order is no longer justifiable.  Defendant alleges—and this Court has found—that the Reed Declaration largely replicated the controversial material in the Peterer Declaration.   Defendant further alleges that the "new" Peterer Declaration repeats substantial portions of the Declaration that remains under seal.  That "new" Declaration has been posted on YouTube, where it remains to this day, available to millions and accessible by any

8

YouTube visitor who wishes to read it.  Nor is it difficult to locate; indeed, Movants immediately found the Declaration by using a simple search based on the information disclosed in the Defendants' motion.

Movants submit that, at this juncture, the Court cannot reasonably make findings that would justify leaving the Sealing Order.  In light of the other disclosures outlined above, any interest that was served by the initial decision to seal no longer exists.  In addition, that order has proven to be an ineffective mechanism for limiting circulation of the allegations contained in the Peterer Declaration.  Thus, whatever the merits of the order when it was entered the time has plainly come to set it aside.

## CONCLUSION

For the reasons set forth above, Movants respectfully request that this Court (a) allow them to intervene, if necessary, and (b) set aside the Sealing Order (including the protective order) and unseal any and all documents currently under seal in this matter.


Respectfully submitted,

By:/s/James E. Stewart_____
     James E. Stewart
     Leonard M. Niehoff
Honigman Miller Schwartz and Cohn, LLP
2290 First National Building
660 Woodward Ave.
Detroit, MI 48226
(313)-465-7542
jstewart@honigman.com
lniehoff@honigman.com
Attorneys for Movants, The New York
Times and WXYZ-TV

## <u>CERTIFICATE OF SERVICE</u>

I, James E. Stewart, hereby certify that on Tue, Dec 18, 2012, I filed the foregoing using

the Court's ECF system, which will serve counsel of record by email notice.

Respectfully submitted,

By:/s/James E. Stewart_____
        James E. Stewart
Honigman Miller Schwartz and Cohn, LLP
2290 First National Building
660 Woodward Ave.
Detroit, MI 48226
(313)-465-7542
jstewart@honigman.com
lniehoff@honigman.com
Attorney for Movants, The New York Times
and WXYZ-TV