UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANYCE TILMON-JONES,
individually, and in her capacity as Personal
Representative of the Estate of Abrim Tilmon, Jr;
CATHERINE M. CARTWRIGHT,
an individual resident of the state of Michigan;
STEVEN M. TILMON,                                       Case No. 11-13002
an individual resident of the state of Indiana;
GLOBAL ROYALTY NETWORK &                                Hon. John Corbett O'Meara
PUBLISHING, a Gibraltar Corporation,

    Plaintiffs,

v.

BRIDGEPORT MUSIC, INC.,
a Michigan corporation; SOUTHFIELD MUSIC, INC.,
a Michigan corporation; WESTBOUND RECORDS, INC.,
a Michigan corporation; NINE RECORDS, INC.,
a Michigan corporation; SYNC2PICTURE, LLC,
a Michigan limited liability company; and
ARMEN BOLADIAN, an individual resident
of the state of Michigan,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING
## IN PART MOTION TO INTERVENE AND UNSEAL RECORDS

    Before the court is the New York Times Company and WXYZ-TV's motion to intervene for the limited purpose of moving to unseal records and lift protective order, filed December 18, 2012. Defendants filed a response on January 16, 2013; movants filed a reply on January 29, 2013.

    The New York Times Company and WXYZ-TV ("Movants") seek the unsealing of court filings in this matter, including the Declaration of Jane Peterer. The Declaration of Jane Peterer

was originally placed under seal by Judge Friedman before this case was reassigned to Judge O'Meara.  See Docket No. 19.  Judge Friedman was concerned that the Peterer Declaration was filed for an improper purpose, in that Plaintiffs' counsel offered not to file the declaration if Defendants agreed to settle the case for $1 million.  See Defs.' Ex. A at 8 (Transcript).  Judge Friedman expressed concern that such a "threat quid pro quo" "violates the civility code of this court." Id.

This court shared Judge Friedman's concern, stating:

> In addition to filing a clearly meritless action, Plaintiffs filed the Declaration of Jane Peterer, containing inflammatory allegations having nothing to do with the issues this court had to decide regarding Defendants' motion to dismiss. Before filing the Peterer Declaration, Plaintiffs' counsel sought $1 million from Defendants in exchange for Plaintiffs' promise not to file it, suggesting that it was not filed for its merit, but for an improper purpose. After the court sealed the Peterer Declaration, Plaintiffs' attorney Gregory Reed filed his own declaration, summarizing and repeating allegations contained in the Peterer Declaration, in an apparent attempt to circumvent the sealing of the Peterer Declaration.

Order Granting Defendants' Motions to Dismiss and for Sanctions (Docket No. 67 at 9-10).  It is the court's impression that the Peterer Declaration was not filed to legitimately support legal arguments made by Plaintiff, but to harass and embarrass Defendants and their counsel.  Indeed, the court did not rely on or refer to the Peterer Declaration in analyzing and adjudicating Defendants' motion to dismiss the complaint, illustrating that the allegations contained in the declaration were irrelevant to the legal issues – release and res judicata, for example – that the court had to decide.

The decision to seal records is within the discretion of the district court.  In re The Knoxville News-Sentinel Co., Inc., 723 F.2d 470, 473 (6th Cir. 1983).  This discretion is,

however, "circumscribed by a long-established legal tradition," which is the "presumptive right of the public to inspect and copy judicial records and files." Id. at 473-74 (citing Nixon v. Warner Comm., 435 U.S. 589, 597 (1978)).  Nonetheless, the right of public access to judicial records is not absolute.  Id.

> Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.  For example, the common law right of inspection has bowed before the power of a court to insure that its records are not "used to gratify private spite or promote public scandal" through the publication of "the painful and sometimes disgusting details of a divorce case."  Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption, or as sources of business information that might harm a litigant's competitive standing.

Nixon, 435 U.S. at 598 (citations omitted).

Here, the court remains concerned that its "court files might have become a vehicle for improper purposes" and believes that several factors weigh against the right of public access to the Peterer Declaration. See id.  First, the declaration played no role in the court's decisions affecting the substantive rights of the parties.  See United States v. Amodeo, 71 F.3d 1044, 1049-50 (2nd Cir. 1995).  As the Second Circuit has explained, "the weight to be give the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Id. at 1049.  "Where testimony or documents play only a negligible role in the performance of Article II duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." Id. at 1050.

Against this relatively low presumption in favor of access, the court weighs the interests of the party resisting disclosure, such as that party's privacy interests and the privacy interests of third parties. See Knoxville News, 723 F.2d at 478 ("[T]he privacy rights of participants and third parties are among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records."); Amodeo, 71 F.3d at 1050-51. Here, the Peterer Declaration contains accusations of fraud against Defendants as well as their attorneys, who are not parties to this litigation. Ms. Peterer lives overseas – outside the subpoena power of the court – and is a disgruntled former employee of Bridgeport Music. Defendants' attorneys have not had a fair opportunity to respond to her accusations in this forum because, as noted above, Defendants' counsel are not parties here and these accusations are not relevant to the issues before the court. Moreover, the veracity of Ms. Peterer's allegations is untested and questionable. As the Second Circuit has explained: "The court should consider the reliability of the information. Raw, unverified information should not be as readily disclosed as matters that are verified. Similarly, a court may consider whether the nature of the material is such that there is a fair opportunity for the subject to respond to any accusations contained therein." Amodeo, 71 F.3d at 1051.

Movants suggest that the Peterer Declaration should be unsealed because certain allegations contained in the declaration have been repeated elsewhere, such as in the Declaration of Gregory Reed and a second Peterer Declaration. The Declaration of Gregory Reed has been stricken from the record, however. See Docket No. 67. The court has also found that the second Peterer Declaration is significantly different than the Peterer Declaration filed in this action. See Docket No. 102.

-4-

In sum, the court will exercise its discretion in favor of keeping the Peterer Declaration under seal. In reviewing its docket, however, the court notes that several documents may have been filed under seal unnecessarily. These documents are as follows: Docket Nos. 21, 22, 32 (except for Exhibit E), 64, 66, 71, 72, 73, 74, 75, and 76. The court will order these documents to be unsealed unless the court receives specific objections within fourteen days of the date of this order.

## ORDER

IT IS HEREBY ORDERED that the New York Times Company and WXYZ-TV's motion to intervene for the limited purpose of moving to unseal records and lift protective order is GRANTED IN PART and DENIED IN PART, consistent with this opinion and order.

s/John Corbett O'Meara
United States District Judge

Date:  June 4, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, June 4, 2013, using the ECF system.

s/William Barkholz
Case Manager